# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | |
|---|---|
| Stephen Ray Carpenter,<br>　　Petitioner, | )<br>)<br>) |
| v. | )　　1:22cv605 (AJT/WEF)<br>) |
| Harold W. Clarke,<br>　　Respondent. | )<br>)<br>) |

### MEMORANDUM OPINION

Stephen Ray Carpenter ("Petitioner" or "Carpenter"), a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his August 24, 2015 convictions in the Circuit Court of Northampton County, Virginia, for malicious wounding, attempted first-degree murder, strangulation, abduction with intent to defile, use of a firearm in commission of a felony, leaving the scene of an accident involving injury, driving under the influence, driving on a suspended license, and possession of cocaine. On June 30, 2022, Respondent filed a Rule 5 Answer and a Motion to Dismiss, with supporting briefs and exhibits. Petitioner was advised of his right to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K) to the motion to dismiss, but he has not filed a response. Accordingly, this matter is now ripe for disposition. For the reasons that follow, the respondent's Motion to Dismiss must be granted and the petition will be dismissed with prejudice.

## I. Procedural History

Carpenter is in state custody pursuant to a final order of the Northampton County Circuit Court entered on August 24, 2015. Pursuant to a plea agreement, he entered Alford[1] pleas of guilty to malicious wounding, attempted first-degree murder, strangulation, abduction with intent to defile, and use of a firearm in commission of a felony; and he entered guilty pleas to leaving the scene of an accident involving injury, driving under the influence, driving on a suspended license, and possession of cocaine. Commonwealth v. Carpenter, Case Nos. CR13000248-01, -02, and -05 through -09; and CR14000020-01 and CR14000077-01. The trial court sentenced Carpenter to 53 years and 90 days in the penitentiary, with 60 days suspended. [Dkt. Nos. 10-1 and 10-2].[2]

Carpenter, by counsel, filed a petition for appeal in the Court of Appeals of Virginia on March 2, 2016 alleging the trial court erred in imposing an excessive sentence, and counsel filed a motion to withdraw in accordance with Anders v. California, 386 U.S. 738 (1967). On March 14, 2016, the court entered an order advising Carpenter of his right to file a pro se supplemental petition for appeal. (Record No. 1501-15-1) (CAV R. at 10). On April 11, 2016, Carpenter filed a pro se supplemental petition for appeal. (Id. at 19-26). Only July 25, 2016, the Court of Appeals of Virginia denied Carpenter's petition for appeal, including the assertions of error in the pro se supplemental petition for appeal, and granted appellate counsel's request to withdraw, pursuant to Anders, 386 U.S. at 744.

The Supreme Court of Virginia granted Carpenter's request to appoint counsel to represent him on appeal in that court on September 14, 2016. (Record No. 161453) (VSCT I at

---

[1] North Carolina v. Alford, 400 U.S. 25 (1970).

[2] As part of the plea agreement, indictments for abduction and one use of a firearm in commission of an attempted murder were dismissed. (CCT at 256, 266).

2

3). Counsel filed a petition for appeal and a motion to withdraw in accordance with Anders on October 17, 2017. (Id. at 4-10). On November 15, 2016, the court granted Carpenter leave to file a supplemental petition for appeal, which he filed on December 8, 2016. (Id. at 11, 12-20). On June 16, 2017, the court granted counsel's motion to withdraw and, "after reviewing the entire record," refused the petition for appeal finding there were "no legal issues of arguable merit." (Id. at 21).

On May 7, 2018, Carpenter filed a pro se petition for a writ of habeas corpus in the Northampton County Circuit Court and raised the following claims:

> (1) "Counsel failed to Investigate Exculpatory evidence in the motion for Discovery where the prosecution's own Investigator said in a written statement as part of the proffer of evidence "The damage to the defendant's car was consistent with the injuries sustained by the victim."
> (2) "Counsel failed to investigate in order to prepare a defense."
> (3) "Counsel failed to investigate the crime scene."
> (4) "Counsel failed to Investigate and Capitalize on the victim[']s inconsistencies when knowingly if Investigated it would have proven victim could not have been beaten with a metal object."
> (5) "Counsel failed to Investigate and properly assist her client in preparing for trial."
> (6) "Counsel failed to Investigate and interview all doctors who had something to do with the victim to see if the injuries were consistent to being hit by a car or by some metal object as stated by the victim."
> (7) "Counsel failed to Investigate and present her client with his complete motion for Discovery so he could assist her in building his defense."

(Case No. CL18-134 at 11-12). The circuit court denied and dismissed the habeas petition on July 31, 2018. (Id. at 82-93). Carpenter did not appeal.

Carpenter filed a pro se motion to vacate in the circuit court, Case No. CR 14-20, on June 8, 2020, challenging his conviction for abduction with intent to defile. The circuit court denied the motion on June 24, 2020 because it no longer had jurisdiction over the case. (CCT at 49). The Supreme Court of Virginia dismissed Carpenter's petition for appeal on March 1, 2021

3

finding the assignment of error was "insufficient because ... it [did] not address any finding(s) or ruling(s) of the circuit court or any failure(s) of the circuit court to rule on an issue...." (VSCT II at 136) (citing Va. S. Ct. Rule 5:17(c)(1)(iii)).

Carpenter subsequently filed a pro se petition for a writ of habeas corpus in the Supreme Court of Virginia on October 16, 2020, and raised the following claims:

> (1) "The petitioner sustained a contravention of [his] 6th amendments [sic] right to effective representation of counsel when [his] court appointed attorney neglected to perform an adequate investigation, which resulted in her failure to identify, develop, and utilize the evidence necessary to support her motions and ultimately caused her legal advice to fall outside the accepted range of competence demanded of defense attorneys."
>
> (2) "The petitioner incurred a deprivation of [his] 6th amendments [sic] right to effective representation of counsel when [his] court appointed attorney provided incorrect legal advice pertaining to relevant laws and prejudicially neglected to inform [him] about the consequences of pleading guilty, which undermined the knowing, voluntary, and intelligent nature of said plea.

(Record No. 201298) (VSCT III at 8). On April 13, 2021, the court dismissed the petition because it was not timely filed. (VSCT III at 37) (citing Va. Code § 8.01-654(A)(2)).

## II. Background

On October 24, 2013, Carpenter hit the victim with his car, and thereafter assaulted and abducted the victim. Carpenter was indicted for eleven offenses and entered into a plea agreement with the prosecution that required that he plead guilty to nine of the charges. On August 18, 2014, during the plea colloquy, Carpenter advised the court that he fully understood the charges against him and that he had discussed the "charges and their elements" with counsel. Carpenter stated that he understood what the prosecution had to prove to convict him of the charges, and that he had sufficient time to discuss any possible defenses with counsel. Carpenter stated that he had discussed how to plead with counsel and he had decided for himself to plead guilty and no contest to the charges. Carpenter affirmed he entered his pleas freely and

4

voluntarily; stated that he was pleading guilty to a portion of the charges because he was, in fact, guilty; and state that he understood that his Alford pleas had the same effect as guilty pleas. (8/18/14 Tr. at 16-17).

Carpenter confirmed that he understood that by pleading guilty he was waiving his rights to a jury trial, to not incriminate himself, and to confront and cross-examine his accusers. Carpenter averred that no one associated with his arrest and prosecution, "or any other person," had threatened him or coerced him into entering his pleas of guilty and no contest. Carpenter also confirmed that he was entirely satisfied with the services of counsel. (Id. at 17-18).

Carpenter acknowledged that by pleading guilty he could be sentenced to life in prison plus fifty-five years and twenty-four months. He further understood that the court was not required to follow the sentencing guidelines, and that there was no parole in Virginia. (Id. at 20-21). Carpenter advised the court that he had signed the plea agreement, which stated that the prosecution agreed to dismiss the indictments for use of a firearm in the commission of attempted murder, abduction, and not to present a charge of possession of a firearm by a convicted felon. Carpenter concurred that the plea agreement expressly stated no agent of the prosecution had made any promises or threats regarding his pleas. (Id. at 22-24).

In support of the pleas, the prosecutor introduced the testimony of Northampton County Sheriff's Office Lieutenant Michelle Hallett and Investigator Terry Thomas, and numerous photographs of the victim's injuries from the attack. (Id. at 32-33). The photographs depicted "redness and deep markings" on her neck, a broken left orbital socket, numerous lacerations to her face and head, and a broken right arm. (Id. at 33-39). As a result of being struck by the defendant's car, the victim also had bruises to her "buttocks, [and] hip area of her right side." (Id. at 39). Hallett stated that the injuries to the victim's buttocks and hip were consistent with the

height of Carpenter's car. The prosecutor also introduced a forensic report that demonstrated the victim's blood was found inside Carpenter's car. (Id. at 40). Hallett listened to recordings of phone calls Carpenter made from jail during which Carpenter admitted that he and the victim had struggled over possession of a shotgun. (Id. at 27-28).

Investigator Terry Thomas testified that Carpenter admitted when Thomas interviewed him that he had struck the victim with the front driver's side of his car and that he had used cocaine before driving. (Id. at 44, 52). Thomas identified photographs of Carpenter's car depicting damage to the front driver's side, as well as blood inside the front passenger area. (Id. at 53, 55). Thomas recovered a bag of cocaine from Carpenter's pants pocket and found shotgun shells inside Carpenter's car, but he did not find a shotgun. (Id. at 56, 58). A friend of Carpenter's told Thomas that Carpenter owned a shotgun at the time of the incident, but no gun was ever recovered. (Id. at 57-58). Thomas testified that two inmates housed with Carpenter had told him that Carpenter had admitted he had used a shotgun to beat the victim and that three inmates had told him that Carpenter had told them he had abducted the victim with the intent to defile her. (Id. at 58, 60).

> The prosecutor provided the following additional proffer of the evidence:
>
> At the time of the offense [on October 24, 2013, the victim, Paige Eminhizer] ... was running on Sunnyside Road near Oyster here in Northampton County. She had gotten off work early. She was dressed in typical – what I would consider typical of female runners – running tights and a shirt. She had a smartphone that was stuffed in her bra and was listening to music through earbuds, the kind of earphones you stick in your ears.... She was struck by a very slow-moving car. We would have had an accident reconstruction expert to say it was a very slow-moving car.
>
> She fell to the ground. But other than the eventual bruising, which the court is now seeing, she was not injured from the – she was not badly hurt. She was injured. She had the bruises and so on but no head injury, nothing like that. She was mostly just knocked down.... She was startled naturally and was doing what she characterized as a self-assessment when the man, ... the defendant, got out of the car which had hit her and asked if she was okay. She said that she was other

6

than the fact that she had just been hit. She turned away from the defendant and returned to what she called her self-assessment to make sure everything was working right and so on; and all of a sudden she realized that she was being repeatedly struck on the head with some object. She attempted to block the blows with her arms and hands.

The photographs of Ms. Eminhizer's face, which the court has received into evidence[,] including the sutures beneath the left eye, multiple head wounds, a hand injury, arm injuries, they all resulted from this attack. There were several blows as you can tell just from the head injury. I mean a lot of different blows.

I advise the court that we have medical evidence about all these injuries, and I call to the court's – and, of course, the orbital socket was broken and I call to the court's attention the fact that her right forearm was literally broken by what is characterized as a defensive wound.

She never saw the instrument which she was being hit with but assumed it was a crowbar or tire iron or something along those lines.... [W]e later learned the defendant apparently beat her with a shotgun which is a hollow tube obviously, which accounts for her not being killed at that point, although she was severely injured.

The attack ended with the defendant demanding that she get up and get into his car, towards which he pushed her. She was screaming for help. He told her to be quiet. [He] [f]orced her into the front passenger seat but through the driver's side door ... and began to drive north.

It's important to realize that she was at that point very badly hurt. One eye was nearly closed altogether as the court can see from the photographs. Blood was streaming down her mostly from the head wounds.

She pleaded with the defendant to take her to a hospital, which the defendant said he would do. The transcript recounts his conversation. I'm not going to go into any detail at that point.

But at that point she produced her cell phone, which had been on her, to call her mother. The defendant snatched it and disposed of it on the driver's side of the car. As the court heard, we never recovered the cell phone or the gun.

She pleaded to be let out of the car. The defendant said that if she would be quiet, he would let her out.

He pulled over to the side of the road and she began to get out of the car on the passenger side. He then grabbed her by the hair. It was put up in a bun, what she characterized as a bun. You can see her in the photograph. He grabbed hold of that and pulled her back into the car.

At this point I'm going to quote Ms. Eminhizer as follows: ["]He pulls me back in the car. At that point he grabs me by my face on both sides and tries to twist my neck. I rolled with it just because it's an unusual feeling to have someone try to break your neck. So I rolled with him and I got away and I was pushed up between the windshield of the car and the dashboard and I just – I kicked at him

7

to try to get away. He then reached out and grabbed me by my throat and tried to choke me to the point that I blacked out. I did not black out, but I was on the verge of blacking out. And he let me go and stuck me in the passenger seat again and drove off with me.["]

She had been stuffed up under the windshield between the dashboard and the windshield.

And I remind the court at this point of the injuries on Ms. Eminhizer's neck which clearly were produced by this phase of the attack.

She then decides to give up the struggle for a while[,] telling the defendant, ["]I'll be good.["] That's a quotation from her testimony. And she just began noticing the car for future reference. Her observations were very useful, accurate and very helpful in this case. Her description of the car and of its contents and the defendant made the investigation go a lot faster than it would otherwise have.

Many of the contents of the car indicated an interest in hunting. There was a bow and a lot of other things.

Ms. Eminhizer tried to engage him on that, in a conversation on that subject obviously to try to appeal to the better angle [sic] of his nature.

He then pulled into the Indian Walk Road.... [and] Ms. Eminhizer noticed that her door had been slightly ajar. The defendant had been keeping it locked. I mean it's automatic door locks, so you can keep it locked. But it was slightly ajar. She popped the door open and began to leave.

At that point there was a struggle over the shotgun which had been in the front seat area with him holding the butt end and her holding the barrel end. And here I'm going to quote her again. Quote, ["]And I got pulled kind of back in with the gun and I let it go and it wasn't a big fall but [he] kind of just fell back,["] meaning the defendant just kind of fell back, ["]and I was like pushing away to get out, and he grabs me by my collar and tries to pull me back in, so I end up just swatting at him and beating at him until I can pull all the way away and get out of the car and I start running.["]

["]And as I'm running, I hear him say, I'm going to shoot you. So I run in zig-zags because I know it's harder to shoot somebody when you're running in zig-zags.["]

["]So I ran into the wood line and I just kept hitting the wood line and I kept running because I assumed at least I'd have a chance in the woods. He's a lot bigger than me so that's – I'm in the wood line. And then further, I hear the car drive off and I kind of peek out of the wood line to see because I can see Seaside and I see him go south on Seaside. And I'm like, [']He's gone, he's gone.['] And I just kept moving. I was like, [']I don't want to be here if he decides to come back.['] So I kept moving and I heard the sound of goats....["]

["]So I kept running towards the sound of goats and I found a set of houses.... There was a little trailer home I believe there, and I went and I knocked on the windows, knocked on the doors. Nobody was home.["]

8

> Ms. Eminhizer went from there to the noise of farm equipment and eventually to the Seaside Road where she flagged down a lady in a car who would not let her in the car. She must have looked remarkable. But she did call 911, and we have that tape.
>
> Then another lady came by in a van, and Ms. Eminhizer banged on her window and that lady did let her get in the car and called 911. She also allowed Ms. Eminhizer to call her mother. The police and ambulance arrived in short order.
>
> And I should tell the court that all the descriptions by this remarkable young woman were – including the goats and the trailer, all that stuff were exactly right. They've been corroborated by the investigation of the officers....
>
> We would have presented the evidence from the two inmates – or two of the inmates that Mr. Thomas talked about with respect to intent to defile. And I have to say that as I mentioned earlier, we did not realize that she had been beaten with a gun. And so this corroboration make[s] things make a lot more sense than they did before. And as I say, one of them had mentioned his intent to kill Ms. Eminhizer.
>
> Both of these guys are maximally impeachable. They're facing big sentences and so on. But unlike us, they knew about the beating with the gun, so they had credibility as far as we were concerned. We knew the gun was there, but we didn't know that that's what he had used to beat Ms. Eminhizer.
>
> And, of course, the actions of the defendant and injuries to Ms. Eminhizer are completely consistent with the charges and the reports of the inmates.
>
> Now, one last thing I should say, Your Honor. I'm sorry to say that Ms. Eminhizer, who is an unusually strong person, has ongoing effects from this incident. The emotional impact is I think gigantic and coming to the fore as this trial date came closer.
>
> But she now occasionally suffers from migraine headaches and vertigo, which were unknown to her before. It's not yet been a year, and perhaps it will improve.

(Id. at 62-72) (quoting from 12/19/13 Preliminary Hearing Transcript).

After hearing the entirety of the prosecutor's proffer, Carpenter advised the Court that he was entering his no-contest pleas because he understood the evidence against him and did not want to "risk that a jury [would] find him guilty." (Id. at 73). Defense counsel also stipulated to the prosecutor's proffer. The Court concluded that "the evidence of guilt is overwhelming and substantially negates [Carpenter's] claim of innocence." (Id.). It further opined that Carpenter's pleas were entered "freely, intelligently, and voluntarily" with "an understanding of the nature of the charges and the consequences of the pleas." (Id. at 73-74).

9

## III. Federal Petition

On May 10, 2022, Carpenter filed his current federal habeas corpus petition. Carpenter argues that he is entitled to relief on the following grounds:

> Ground 1: It[']s a fundamental right that the petitioner[']s counsel conduct a full investigation into each and every charge as required under the 6th amendment of the United States Constitution that entitles the petitioner to effective representation of counsel at every critical stage of a criminal prosecution.
>
> Ground 2: The petitioner has a fundamental right under the 5th and 14th amendment due process to be informed by his counsel of the maximum sentencing guidelines.

[Dkt. No. 1 at 19].[3]

## IV. Statute of Limitations

A petition for a writ of habeas corpus must be dismissed if filed later than one year after (1) the judgment becomes final; (2) any state-created impediment to filing a petition is removed; (3) the United States Supreme Court recognizes the constitutional right asserted; or (4) the factual predicate of the claim could have been discovered with due diligence. See 28 U.S.C. § 2244(d)(1)(A)-(D). In calculating the one-year period, however, the Court must exclude the time during which properly filed state collateral proceedings pursued by petitioner were pending. See 28 U.S.C. § 2244(d)(2); Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005) (determining that the definition of "properly filed" state collateral proceedings, as required by § 2244(d)(2), is based on the applicable state law as interpreted by state courts). Pursuant to 28 U.S.C. § 2244(d)(1)(A), a state prisoner must file his petition for a writ of habeas corpus within one year of the completion of the state court direct review process. This period is subject to tolling while a "properly filed

---

[3] Carpenter dated his § 2254 petition May 10, 2022. The envelope was post marked May 19, 2022 and stamped received by the Clerk on May 23, 2022. [Dkt. No. 1 at 1, 19, 21]. For purposes of this motion, the Court will use the May 10, 2022 date. See Houston v. Lack, 487 U.S. 266, 276 (1988) (a petition is deemed filed "at the time petitioner delivered it to the prison authorities for forwarding to the court clerk").

application for State post-conviction or other collateral review ... is pending ...." Carpenter's federal petition, filed on May 10, 2022, is untimely under § 2244(d)(1)(A).

The Supreme Court of Virginia refused Carpenter's petition for appeal on June 16, 2017. (VSCT II at 21). At that point, he had 90 days to file a petition for a writ of certiorari in the United States Supreme Court for review of the Supreme Court of Virginia's order refusing his petition for appeal. The one-year limitation period under 28 U.S.C. § 2244(d)(1)(A), therefore, began on Thursday, September 14, 2017. See Harris v. Hutchinson, 209 F.3d 325, 328 n.1 (4th Cir. 2000) (the one-year period does not commence until the latest of either the date when judgment on direct review "became final" or "the expiration of the time for seeking such review") (citing 28 U.S.C. § 2244(d)(1)(A)). Unless tolled, Carpenter's one-year period to file for federal habeas review expired on Tuesday, September 14, 2018.

*A. Statutory Tolling*

When Carpenter filed his state habeas petition in the circuit court on May 7, 2018, 235 days of the federal one-year period had elapsed. Accordingly, he had 130 days remaining after the conclusion of state habeas proceedings to file for federal habeas review of his convictions. The circuit court dismissed Carpenter's state habeas petition on July 31, 2018, but he did not file an appeal to the Supreme Court of Virginia from that dismissal. See Tinker v. Moore, 255 F.3d 1331, 1333 (11th Cir. 2001) ("even 'properly filed' state-court petitions must be 'pending' in order to toll the limitations period"). Allowing for the thirty-day period to note an appeal, absent any other applicable tolling, Carpenter had 130 days from that date, or until Monday, January 7, 2019, to file his federal habeas petition. Carpenter, however, did not file his federal habeas petition until May 10, 2022, which was over three years after the federal statute of limitations had expired. See Vroman v. Brigano, 346 F.3d 598, 602 (6th Cir. 2003) ("The tolling provision

11

does not, however, 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations.") (emphasis added); see also Trapp v. Spencer, 479 F.3d 53, 58-59 (1st Cir. 2007) (tolling "does not reset the clock on the limitations period ... but merely stops it temporarily, until the relevant applications for review are ruled upon"), abrogated on other grounds by Holmes v. Spencer, 822 F.3d 609 (1st Cir. 2016); Moore v. Crosby, 321 F.3d 1377, 1381 (11th Cir. 2003) ("While a 'properly filed' application for post-conviction relief tolls the statute of limitations, it does not reset or restart the statute of limitations once the limitations period has expired.").[4]

### B. *Equitable Tolling*

A habeas petitioner may be permitted to file a federal habeas petition out of time if he can establish his entitlement to equitable tolling, which requires that the petitioner show "(1) that he has been pursuing his rights diligently, *and* (2) that some extraordinary circumstance stood in his way" and prevented timely filing. See Holland v. Florida, 560 U.S. 631, 649 (2010) (citation omitted) (emphasis added). A petitioner asserting equitable tolling "bears a strong burden to show specific facts" that demonstrate fulfillment of both elements of the test. Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008). The Fourth Circuit observed that equitable tolling is reserved for "those rare instances where—due to circumstances external to the party's own conduct—it

---

[4] The motion to vacate filed in the circuit court on June 8, 2020 and the second state habeas petition filed in the Supreme Court of Virginia on October 16, 2020, were each filed after the expiration of the federal statute of limitations and therefore do not toll the already expired federal statute of limitations. Moore, 321 F.3d at 1381 ("A state application filed after expiration of the limitations period does not relate back so as to toll idle periods preceding the filing of the federal petition."); see McCloud v. Hooks, 560 F.3d 1223, 1227 (11th Cir. 2009) ("While a Rule 32 petition is a tolling motion under § 2244(d)(2), it cannot toll the one-year limitations period if that period has expired prior to filing the Rule 32 petition.") (citation omitted); see also Pace, 544 U.S. at 417 (holding petitioner was not entitled to statutory tolling under 28 U.S.C. § 2244(d)(2) where state habeas petition was dismissed as untimely); Artuz v. Bennett, 531 U.S. 4, 8 (2000) (holding a state collateral proceeding is not "properly filed" for purposes of tolling the federal limitations period if it is filed untimely).

12

would be unconscionable to enforce the limitation period against the party and gross injustice would result." Harris, 209 F.3d at 330. Carpenter bears the burden to prove that he exercised due diligence. DiCenzi v. Rose, 452 F.3d 465, 471 (6th Cir. 2006).

Carpenter does not assert he is entitled to equitable tolling, but in his habeas petition he stated that he "followed and used all state remedies [he] was aware of" and "did not know that [he] could" exhaust his state remedies. Carpenter's pro se status and lack of knowledge of the law are not the type of extraordinary circumstances that justify equitable tolling—"even in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling." United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004) (citing Cross-Bey v. Gammon, 322 F.3d 1012, 1015 (8th Cir. 2003) ("Even in the case of an unrepresented prisoner alleging a lack of legal knowledge or legal resources, equitable tolling has not been warranted." (quotation marks omitted)); United States v. Riggs, 314 F.3d 796, 799 (5th Cir. 2002) ("[A] petitioner's own ignorance or mistake does not warrant equitable tolling ...."); Delaney v. Matesanz, 264 F.3d 7, 15 (1st Cir. 2001) (rejecting argument that a pro se prisoner's ignorance of the law warranted equitable tolling); Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) (same); Smith v. McGinnis, 208 F.3d 13, 18 (2d Cir. 2000) (pro se status does not establish sufficient ground for equitable tolling). "To count as sufficiently 'extraordinary' to support equitable tolling, the circumstances that caused a litigant's delay must have been beyond its control .... [and] cannot be a product of that litigant's own misunderstanding of the law or tactical mistakes in litigation." Menominee Indian Tribe of Wis. v. United States, 764 F.3d 51, 58 (D.C. Cir. 2014) (collecting cases). Because Carpenter has failed to demonstrate that he pursued his rights diligently and that some extraordinary circumstance prevented him from filing in a timely manner, he is not entitled

13

to equitable tolling, and his petition will be dismissed.[5]

### C. Actual Innocence

The Supreme Court has recognized actual innocence as a basis for overcoming the expiration of the statute of limitations. See McQuiggin v. Perkins, 569 U.S. 383, 386 (2013) (explaining that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... or ... expiration of the statute of limitations"). To establish actual innocence, "[new] evidence must establish sufficient doubt about [a petitioner's] guilt to justify the conclusion that his [incarceration] would be a miscarriage of justice unless his conviction was the product of a fair trial." Schlup v. Delo, 513 U.S. 298, 316 (1995) (emphasis in original). A gateway claim requires a petitioner to present "*new* reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Id. at 324 (emphasis added).

Here, Carpenter has not proffered any new evidence that he learned of after pleading guilty. Although he asserts that the violation of Virginia Code § 18.2-48(ii) for abduction with intent to defile, for which he entered an Alford plea of guilty, was "the wrong crime," he does not demonstrate that there is any new evidence exonerating him. Instead, he asserts that he "never attempted to engage in any sexual acts or sexual intent" with the victim and that he had drugs in his system and "was not functioning normally." [Dkt. No. 1-1 at 13]. As a result,

---

[5] "[E]ven in situations in which equitable tolling initially applies, a party must file suit within a reasonable period of time after realizing that such a suit has become necessary." Walker v. Frank, 56 F. App'x 577, 582 (3d Cir. 2003). "A grant of equitable tolling, unlike statutory tolling, does not shift the deadline so that each day of tolling results in a one-day postponement of the deadline." Ragan v. Horn, 598 F. Supp.2d 677, 680 (E.D. Pa. 2009) (citing Phillips v. Heine, 984 F.2d 489, 492 (D.C. Cir.1993)), rev'd on other grounds, 411 F. App'x 491 (3d Cir. 2011). Once the extraordinary circumstances justifying equitable tolling have ended, the petitioner must file as soon as reasonably possible. Id.; Colwell v. Tanner, 79 F. App'x 89, 92 (6th Cir. 2003) (equitable tolling continues only for the time during which "the conditions that served to justify equitably tolling the statute of limitations" existed); see also Hentosh v. Herman M. Finch Univ. of Health Sciences/The Chicago Med. Sch., 167 F.3d 1170, 1175 (7th Cir. 1999) (tolling does not provide "an automatic extension of indefinite duration" and the plaintiff must file within a reasonable period of time).

14

Carpenter has not shown that he is actually innocent of the offenses and his claims remain barred by the statute of limitations.

    D.    *Martinez v. Ryan*, 566 U.S. 1 (2012)

In <u>Martinez v. Ryan</u>, the United States Supreme Court recognized an exception to the default doctrine for a "substantial" claim of ineffective assistance of counsel in connection with an initial-review collateral proceeding addressing claims of trial counsel error. See <u>Atkins v. Holloway</u>, 792 F.3d 654, 661 (6th Cir. 2015) (citations omitted); see also <u>Johnson v. Warden of Broad River Corr. Inst.</u>, No. 12-7270, 2013 U.S. App. LEXIS 4740, *2 (4th Cir. Mar. 8, 2013) ("while ineffective assistance in initial-review collateral proceedings might constitute cause for failure to exhaust certain claims, the <u>Martinez</u> rule did not 'concern attorney errors in other kinds of proceedings including appeals from initial-review collateral proceedings.'") (citing <u>Martinez</u>, 566 U.S. at 16). The <u>Martinez</u> exception does not apply to Carpenter's petition because <u>Martinez</u> "'has no application to the operation or tolling of the § 2244(d) statute of limitations' for filing a § 2254 petition." <u>Lambrix v. Sec'y. Fla. Dep't of Corr.</u>, 756 F.3d 1246, 1262 (11th Cir. 2014) (citation omitted); <u>Wilson v. Perry</u>, No. 1:14CV576, 2014 U.S. Dist. LEXIS 131561, at *3 (M.D.N.C. Sept. 19, 2014) ("<u>Martinez</u> and <u>Trevino [v. Thaler</u>, 569 U.S. 413 (2013)] each addressed whether a procedural bar, rather than a time bar, should apply to an ineffective assistance of counsel claim from a state habeas proceeding. Thus, <u>Martinez</u> and <u>Trevino</u> are inapplicable to the determination of untimeliness under the AEDPA one-year statute of limitations."), <u>appeal dismissed</u>, 588 F. App'x 216 (4th Cir. 2014); see also <u>Couch v. Woodson</u>, No. 3:13cv146, 2013 U.S. Dist. LEXIS 158461, at *6 (E.D. Va. Nov. 5, 2013) (collecting cases); see also <u>Lombardo v. United States</u>, 860 F.3d 547, 557–58 (7th Cir. 2017) (declining to "extend <u>Martinez</u>'s reasoning to create a similar exception to the statute of limitations, under which an

attorney's ineffectiveness would constitute extraordinary circumstances"). Even if Martinez did apply, however, Carpenter has not alleged a substantial claim. Whether a claim is substantial is determined under familiar principles governing claims of ineffective assistance set forth for in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, Carpenter has the burden to show both that his attorney's performance was deficient and that he was prejudiced as a result. Id. at 687. The Fourth Circuit has noted that in the context of a guilty plea

> [c]ounsel's deficient performance is prejudicial only if "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." Hill[ v. Lockhart], 474 U.S. [52,] 59 [(1985)]. This is an objective inquiry, see Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988), and dependent on the likely outcome of a trial had the defendant not pleaded guilty. Hill, 474 U.S. at 59-60.

Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007). A movant's "bare allegation that he would not have pleaded guilty is insufficient to establish prejudice under Strickland." Roach v. Roberts, 373 F. App'x 983, 985 (11th Cir. 2010) (citing United States v. Campbell, 778 F.2d 764, 768 (11th Cir. 1985)).[6]

Carpenter's first claim of ineffective assistance of counsel alleges that his trial counsel was ineffective because she failed to "conduct a full investigation into each and every charge" and if she had counsel would have discovered that he was charged with "the wrong crime," because Virginia Code § 18.2-48, abduction with intent to defile, required that Carpenter "harbored an intent to have sexual contact with the alleged victim." [Dkt. No. 1 at 12]. Carpenter "never attempted to engage in any sexual acts or sexual intent. [Id.]. The sexual intent element of this offense was satisfied by Carpenter's statements to other inmates in which he admitted he

---

[6] "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." Lee v. United States, 137 S. Ct. 1958, 1967 (2017). "[A] petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Diveroli v. United States, 803 F.3d 1258, 1263 (11th Cir. 2015) (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)) (internal quotation marks omitted).

16

abducted the victim with the intent to defile her. (8/8/14 Tr. at 58, 60, 72). Carpenter, after hearing the entirety of the proffer, told the circuit court that he understood the evidence against him and was pleading "no-contest' because he did not want to "risk that a jury [would] find him guilty." (Id. at 73). See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1299 (4th Cir. 1992) ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy").

Further, after his plea but before sentencing, Carpenter wrote the circuit court a letter. In his letter he admitted that he agreed to the plea agreement, even after the prosecutor had refused to reduce the abduction with intent to defile to simple abduction. (CCT at 386) (1/11/15 letter). In his letter, Carpenter admitted he abducted the victim but denied he ever made the statements to the inmates. He then continues stating that his counsel had told him that she thought they did not stand "a chance and suggested [he] take the plea." (Id.). The letter continued with Carpenter stating he did not want to take the deal, but felt it "was in his best interest" and further stated that he "was not forced to take the plea [but felt] as if [he] was left with not much of a choice." (Id. at 387).

Carpenter was not only charged under the correct statute, which was substantiated by the proffer, but his own admissions establish that his counsel did not act unreasonably in advising him to plead guilty. Moreover, after reviewing the record, Carpenter has not established prejudice under Hill.

Carpenter's second claim of ineffective assistance of counsel alleges that his attorney was ineffective because she did not inform him of the "maximum sentencing guidelines," and he assumed that he would be sentenced to between "7 years 3 months and 19 years 6 months." [Dkt. No. 1 at 16, 17]. The record refutes Carpenter's claim. Carpenter acknowledged during his plea

17

colloquy that he could be sentenced up to life in prison plus fifty-five years and twenty-four months by pleading guilty, and that the circuit court did not have to follow the guidelines. (8/18/14 Tr. at 20-21). The record establishes that the circuit court advised Carpenter not only of the maximum punishments he faced (life plus fifty-five years and twenty-four months) but also that the court was not bound to follow the sentencing guidelines. See, supra at 5. Carpenter has not established counsel acted unreasonably and he has failed to establish the requisite prejudice under Hill.[7]

---

[7] To the extent Carpenter is raising a claim that he was not advised he would have to register as a sex offender [Dkt. No. 15-16], that claim is not only barred as untimely but it is defaulted as well because it was not raised in state court. In addition, he did not designate it as a claim in his federal petition. See Folkes v. Nelsen, 34 F.4th 258, 269 (4th Cir. 2022) (citations omitted) (holding that a district "court must consider claims as they are presented in the petition, reviewing them under the applicable standard.... [and it is] the district court's duty to consider only the specific claims raised in a § 2254 petition").

In any event, his allegations do not state a claim of ineffective assistance of counsel and ignore the record. In the plea colloquy, Carpenter stated that he understood he could be sentenced to life in prison and the circuit court advised him that the consequences of his plea could result in a "wide variety of consequences" that included but was not limited to "civil commitment." (8/18/14 Tr. at 20). Carpenter was properly advised that he could be sentenced to life imprisonment and he could be subject to civil commitment, which preclude any finding of the requisite prejudice assuming he did not know he would have to render as a sex offender registration if he is ever released. Further, the "likely consequences" of which a defendant must be informed are only the *direct* consequences of the plea. A defendant need not be informed about the *collateral* consequences of his plea, and failure to so inform him does not render the plea involuntary. United States v. Nicholson, 676 F.3d 376, 381 (4th Cir. 2012). In Chaidez v. United States, 568 U.S. 342 (2013) the Court expressly stated that "effects of a conviction commonly viewed as collateral include civil commitment, civil forfeiture, *sex offender registration*, disqualification from public benefits, and disfranchisement." Id. at 349 n.5 (emphasis added). Accordingly, assuming counsel did not advise Carpenter he would be required to register as a sex offender counsel's assistance was not unreasonable because Carpenter was advised of the direct consequences of his pleas, and he has not established the requisite prejudice required by Hill. See Vaughn v. Holloway, No. 16-5225, 2017 U.S. App. LEXIS 21086, at *9 (6th Cir. Sept. 18, 2017) (noting under the § 2254(d) standard "there is no clearly established federal law holding that the Sixth Amendment right to effective counsel requires a defense attorney to give ... advice" about needing to register as a sex offender), cert. denied, 138 S. Ct. 1274 (2018); see, e.g., Edmonds v. Pruett, No. 1:13cv1167, 2014 U.S. Dist. LEXIS 116736, *15 (E.D. Va. Aug. 20, 2014) ("failure of 'defense counsel to ascertain and advise of the collateral consequences of a guilty plea ... is not ineffective assistance of counsel.' United States v. Yearwood, 863 F. 2d 6, 8 (4th Cir. 1988). As 'sex offender registration is a collateral consequence of a guilty plea,' Leslie v. Randle, 296 F.3d 518, 522 (6th Cir. 2002)," the petitioner's "argument that his counsel was ineffective in failing to correctly inform him that 'if he pleaded guilty, he would not have to register as a sex offender" ...fails as a matter of law").

## V. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss [Dkt. No. 9] is granted, and this petition must be dismissed with prejudice. An appropriate Order and judgment shall issue.[8]

Entered this 29 day of November 2022.

Alexandria, Virginia

Anthony J. Tr[...]
Senior United [...] District Judge

---

[8] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.